# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6988 | **DATE** | 6/25/2003 |
| **CASE TITLE** | | USA vs. Jimmie Gholson | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on ___ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. United States' motion to dismiss section 2255 petitions (Doc. No. 4-1) is granted in part and entered and continued in part. Gholson's motions to amend his section 2255 petition (Doc. 2-1, 5-1) are granted. The court directs the United States to file a supplemental response to Petitioners' motions, addressing matters that remain outstanding, within 30 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 2 number of notices | **Document Number** |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 26 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 10 |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | 6/25/2003 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| ETV | courtroom deputy's initials | | ETV mailing deputy initials | | |

U.S. DISTRICT COURT

03 JUN 25 PM 4: 53

Date/time received in central Clerk's Office

**DOCKETED**

JUN 2 6 2003

UNITED STATES OF AMERICA )
)
v. )  NO.  96 CR 553
)  02 C 6988
JIMMIE GHOLSON, )
COMPTON JONES, and )  Judge Rebecca R. Pallmeyer
ROLAND TETTEH )

## MEMORANDUM OPINION AND ORDER

Petitioners Jimmie Gholson, Compton Jones, and Roland Tetteh were convicted in federal court, following a jury trial, for a variety of offenses related to their involvement with the drug distribution conspiracy operated by the Gangster Disciple street gang in Chicago. Following their convictions, Gholson was sentenced to a term of life imprisonment, Jones was sentenced to a 420-month term of imprisonment and Tetteh was sentenced to a 292-month term of imprisonment. The Seventh Circuit affirmed their convictions and sentences on direct appeal. *United States v. Wilson, et al,* 237 F.3d 827 (7th Cir. 2001).  Now before this court are Petitioners' *pro se* petitions for habeas relief pursuant to 28 U.S.C. § 2255. Although Petitioners filed their petitions on separate dates (Jones filed on July 3, 2002, Gholson filed September 20, 2002, and Tetteh filed on October 2, 2002), the court has consolidated these petitions because Petitioners were involved in the same drug conspiracy and raise similar legal issues. Also before this court are four additional motions filed by Gholson: (1) motion to amend his original habeas petition; (2) motion to reduce his sentence pursuant to 18 U.S.C. § 3582; (3) motion to modify his fine pursuant to 18 U.S.C. § 3572; and (4) motion pursuant to Federal Rule of Criminal Procedure 12(b)(2) attacking the sufficiency of his indictment.  On December 6, 2002, the United States filed a motion to dismiss each of Petitioners' section 2255 motions.



Petitioners, who were members of the Gangster Disciple street gang, were indicted in May 1997 for their involvement with the drug conspiracy organized and operated by the Gangster Disciples. *Wilson*, 237 F.3d at 830. The Gangster Disciples are a Chicago street gang that at one time had a membership of 6,000. *Jackson*, 207 F.3d at 913; *Smith*, 223 F.3d at 560. The gang operated a highly organized drug operation that was primarily engaged in the sale of "crack" and powder cocaine. *Jackson*, 207 F.3d at 913. By the early 1990s, the Gangster Disciples had annual revenues of approximately $100 million. *Id.* In order to carry out this lucrative criminal endeavor, the Gangster Disciples developed a very sophisticated operational structure with a well-defined leadership hierarchy. *Id.* At the top of the hierarchy was Larry Hoover, who continued to lead the gang even after he was incarcerated in an Illinois state prison. *Id.* Below Hoover in the leadership hierarchy was the board of directors, followed by governors and then regents, who had specific assigned territories. *Id.* Also included in this hierarchy of leadership were treasurers, assistant governors, security chiefs and other members with specific responsibilities. *Id.* Gholson was a board member from April to September 1996. *Wilson*, 237 F.3d at 834. It is unclear from the record what exact role the other Petitioners played in the leadership hierarchy of the Gangster Disciples.

Petitioners Gholson, Jones, and Tetteh were tried together in federal court in a jury trial that lasted from July 16, 1998 to August 21, 1998. Ultimately the jury found each of the Petitioners

---

[1] The facts for this section are garnered from the Seventh Circuit's decision affirming Petitioners' convictions in *United States v. Wilson*, 237 F.3d 827 (7th Cir. 2001). The Seventh Circuit had addressed the Gangster Disciple drug conspiracy on a number of occasions prior to Petitioners' appeal. As a result, the court in *Wilson* provided only a brief factual background and directed the reader to its opinions in *United States v. Smith*, 223 F.3d 554 (7th Cir. 2000) and *United States v. Jackson*, 207 F.3d 910 (7th Cir. 2000), for a more complete description. None of the parties have provided a full transcript of the trial proceedings or a copy of the Petitioners' briefs on direct appeal. Instead, both sides have attached select portions of the transcripts of Petitioners' sentencing hearings.

guilty of a variety of drug offenses. *Id.* at 830. Specifically, the jury found Jones guilty on a conspiracy charge to distribute controlled substances, under 21 U.S.C. § 846; two counts related to using minors for drug operations, under 21 U.S.C. §§ 861(a)(1) and (2); and one count of possession with the intent to distribute a controlled substance, under 21 U.S.C. § 841(a)(1). *Id.* Judge Marovich of this court sentenced Jones to a 420-month prison term, followed by 10 years of supervised release. *Id.* As for Tetteh, the jury also found him guilty of a conspiracy charge under section 846 and on two counts related to his using minors in connection with that conspiracy, under section 861(a)(1) and (2). *Id.* He was sentenced by the district court judge to 292 months of imprisonment, followed by a five-year term of supervised release. *Id.* Lastly, Gholson was found guilty of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a), conspiracy to distribute drugs in violation of 21 U.S.C. § 846, and use of a minor in a drug distribution operation in violation of 21 U.S.C. § 861(a)(1) and (2). *Id.* Judge Marovich sentenced Gholson to a term of life imprisonment, to be followed by a 10 year term of supervised release. *Id.* In imposing these sentences, Judge Marovich relied on the sentencing guidelines applicable to crack cocaine using drug quantities calculated by the district court. *Id.* at 831.

Following sentencing, each Petitioner filed a separate appeal raising a number of issues. *Id.* at 831-836. Although these appeals were filed separately (Tetteh filed on December 30, 1998, Jones on January 11, 1999, and Gholson on January 15, 1999), the appeals were consolidated. The Court of Appeals disposed quickly of many of the issues raised by Petitioners on direct appeal because those arguments had been previously considered and rejected by the court in the previous Gangster Disciple cases. *Id.*, *see also Jackson*, 207 F.3d 910, and *Smith*, 223 F.3d 554. For instance, the court rejected Petitioners' request to reconsider certain determinations it had made in earlier cases, including that: (1) the wire tap placed on Hoover was proper; (2) the federal statute that permits "roving surveillance," 18 U.S.C. § 2518(11), does not violate the Fourth Amendment; and (3) the government's failure to immediately seal the surveillance tapes was not proper grounds

3

for exclusion of the tapes. *Wilson*, 237 F.3d at 831.

In addition to these arguments, Petitioners also urged the Seventh Circuit to find that the district court erred when it determined that the substance distributed by Petitioners was crack cocaine and, as a result, applied the wrong sentencing guideline, U.S.S.G. § 2D1.1(c)(D), in sentencing Petitioners. *Id.* at 831. The Seventh Circuit rejected this argument, observing that "the government proved by a preponderance of the evidence that the substance being sold was crack cocaine." *Id.* The Seventh Circuit also rejected the Petitioners' argument that the district court used a flawed method in determining the drug quantities for sentencing purposes. *Id.* The court then affirmed the type and quantity determinations made by the district court, finding no clear error in those determinations. *Id.*

Gholson raised additional issues distinct from Petitioners Tetteh and Jones. Specifically, he appealed his conviction and sentence related to his participation in a continuing criminal enterprise (CCE) under 21 U.S.C. § 848. Gholson claimed that his conviction under this criminal statute could not stand because under the Supreme Court's decision in *Richardson v. United States*, 526 U.S. 813 (1999), the jury had to unanimously agree that Gholson performed the specific predicate acts required to demonstrate the existence of a CCE. *Id.* at 833. Although the Seventh Circuit acknowledged that the jury was not instructed that it needed to make this finding related to the predicate offenses, the court found that it was harmless error. *Id.* The court noted that the jury did in fact convict on two predicate offenses necessary for the CCE conviction against Gholson. *Id.* Specifically, Gholson was convicted of 21 U.S.C. § 861(a)(1), using a minor to facilitate the drug conspiracy, and 21 U.S.C. § 861(a)(2), using a minor to avoid detection and apprehension. *Id.* The court observed that two predicate acts, the two counts related to using a minor in connection with the conspiracy, were sufficient to establish a CCE. *Id.*

The statute mandates a sentence of life imprisonment or a person convicted of a CCE charge if "such person is . . . one of several such principal administrators, organizers, or leaders"

and the CCE either "sold a certain quantity of drugs or reaped a certain amount of receipts." *Id.* at 834. Gholson argued on appeal that the district court incorrectly determined that he was a "principal" under the CCE statute. *Id.* at 834. The court rejected this argument because he served as a board member of the Gangster Disciples for six months in 1996. *Id.* The Seventh Circuit also found that if the "principal" finding by the district court was erroneous, it was harmless because under two different scenarios, Gholson would still have been sentenced to a term of life imprisonment. *Id.* Under the sentencing guidelines relevant to a CCE conviction, the court noted, Gholson would have had a base offense level of 38, which would be increased by four levels for the quantity of drugs involved and two levels for the possession of a firearm for a level of 44. *Id.* This level of 44 also carries a mandatory term of life imprisonment. *Id.* Alternatively, according to the court, Gholson's sentencing level under the conspiracy conviction was at least a level 45, which also requires a life term. *Id.*

Petitioners now seek relief from this court under 28 U.S.C. § 2255, raising numerous issues that often overlap each other or restate arguments made on appeal. Although Petitioners raise multiple issues, the government has addressed the claims as raising: (1) issues related to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) double jeopardy claims; and (3) ineffective assistance of counsel claims.

## DISCUSSION

Under section 2255, an individual convicted of a federal crime is permitted to move the district court to vacate, set aside, or correct his or her sentence. 28 U.S.C. § 2255. Collateral relief under section 2255 is not available in all circumstances, however. Relief is limited to circumstances in which there was "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir.1994), quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir.1991).

Relief under section 2255 may be granted to remedy only an error of law that is a "fundamental defect which inherently results in a complete miscarriage of justice." *Arango-Alvarez v. United States*, 134 F.3d 888 (7th Cir. 1998), quoting *Davis v. United States*, 417 U.S. 333, 346 (1974). If this court finds that such grounds exist, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

Prior to reaching the merits of a petitioner's claims, however, the district court must determine that "the issue has been raised in a procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). A motion under section 2255 does not substitute for a direct appeal. *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) citing *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). Thus, a section 2255 motion cannot raise: "(1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; . . . and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (emphasis in original).

Petitioners raise a number of issues under 28 U.S.C. § 2255 in pursuit of habeas relief. Many of these issues are similar, if not the same. Jones and Tetteh were assisted by the same inmate, John Gregory Lambros, in drafting their petitions and submitted identical motions for habeas relief, with the exception that Jones raises one additional issue not included in Tetteh's petition. Although Gholson did not file an identical petition, many of the issues raised in his petition mirror those of his co-Petitioners. Where possible, the court will address those issues common to the Petitioners prior to addressing the issues unique to a particular Petitioner.

Although the court will liberally construe a prisoner's *pro se* petition, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the burden still rests with Petitioners to show that they are entitled to habeas

6

relief. Before addressing the merits of the petitions for habeas relief, the court notes that Gholson has submitted two motions in an effort to amend his original § 2255 petition. The first motion to amend his petition was filed on October 22, 2002 and the second was filed on April 14, 2003.[2] Because the government has not argued that these subsequent amendments to Gholson's petition constitute an abuse of the writ, the court will consider the additional claims along with the original. *McCleskey v. Zant*, 499 U.S. 467, 477 (1991) ("government has the burden of pleading abuse of the writ"). Accordingly, Gholson's motions to amend his section 2255 petition are granted.

I.    **Section 2255 Motions**

  A.    ***Apprendi* Claims**

Petitioners raise a variety of issues regarding the sentence imposed by the district court judge following their convictions. The government interprets these claims as challenges based upon the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that the "Due Process Clause entitles defendant to decision by the trier of fact, on the reasonable-doubt standard, of any fact (other than a prior conviction) that increases the statutory maximum penalty." *United States v. Bjorkman*, 270 F.3d 482, 491 (7th Cir. 2001), citing *Apprendi*, 530 U.S. at 490. Petitioners object to this characterization,[3] but in this court's view, Petitioners are essentially challenging (in many different ways) the judge's authority to make findings of fact relevant for sentencing purposes. The court therefore concludes it is appropriate to discuss these claims as if Petitioners were invoking their rights under *Apprendi*.

Petitioners Jones and Tetteh argue, first, that their constitutional right to due process was

---

   [2]    Although Gholson filed these motions as amendments to his petition, he later indicated to the court that he sought to supplement the issues raised in his motion and that he did not want to abandon any arguments raised in his original petition. (May 1, 2003 Letter from Gholson to the court).

   [3]    Although the court notes that both Jones and Tetteh have raised a separate claim under *Apprendi* in their petition, they do not discuss the holding of *Apprendi* or how the decision relates to their case. As for Gholson, he has cited *Apprendi* in his petition, but objects to his arguments being collectively characterized as *Apprendi* claims.

violated when they were sentenced by the district court judge based on the sentencing guidelines for crack cocaine, despite the fact that the jury returned only a general guilty verdict on the conspiracy charge under 21 U.S.C. § 846. Petitioners were charged with conspiracy to distribute marijuana, cocaine base, cocaine, and heroin. Because the type of drug was relevant for the purposes of sentencing, Petitioners claim that the jury was required to make a finding as to the drug type involved in the conspiracy. In the absence of this specific finding by the jury, Petitioners claim that the judge was required to sentence Petitioners according to the drug type that yields the most lenient maximum sentence, in this case, marijuana.

In support of their claim, Petitioners have cited authority from the Second and Sixth Circuits. In *United States v. Dale*, 178 F.3d 429, 431-32 (6th Cir. 1999), the defendant was charged with conspiracy to distribute both marijuana and crack cocaine, but the jury returned a general verdict of guilty on the charge without making a finding as to which type of drug was involved in the conspiracy. *Id*. at 431. The Sixth Circuit stated that when a jury returns a general verdict on a conspiracy charge involving multiple drugs, the defendant must be sentenced "as if he distributed only the drug carrying the lower penalty." *Id*. at 432. Similarly, in *United States v. Barnes*, 158 F.3d 662 (2nd Cir. 1998), the defendant was charged in relation to a drug distribution conspiracy involving both marijuana and cocaine. *Id*. at 667. Because the jury returned a general verdict that was not drug specific, the court stated that it is to be presumed that defendant distributed the drug that "carries the most lenient statutorily prescribed sentence." *Id*. at 668.

Prior to the Court's decision in *Apprendi*, the Seventh Circuit had a much different approach to this dilemma. *United States v. Brough*, 243 F.3d 1078, 1079 (7th Cir. 2001). Specifically, prior to the *Apprendi* decision, the Seventh Circuit held that the jury was to determine whether the defendant was guilty of distributing drugs and the court was responsible for determining the type and amount of drugs involved. *Id*. Following the Supreme Court's *Apprendi* decision, the Seventh Circuit recognized that the finder of fact must determine culpability and the facts relevant to the penalty. *Id*.

8

Jones and Tetteh have raised this *Apprendi* issue for the first time in their section 2255 petition. In order to raise a constitutional issue for the first time in a 2255 petition, a petitioner must meet the "cause and prejudice test"— that is, petitioner must show a cause for his failure to raise the claim on direct appeal and demonstrate that he was prejudiced by the failure to raise the issue. The court notes that Petitioners did not attack their convictions or sentences based on *Apprendi*, even though the decision was issued three months prior to the oral argument on their appeal to the Seventh Circuit on September 25, 2000, and was the subject of much media and scholarly attention. Instead, Petitioners argued on direct appeal that the evidence presented at their trial did not support the trial court's finding that the drug involved in the conspiracy was crack. *Wilson*, 237 F.3d at 831. Petitioners did not argue that the jury was required to make the drug type determination.

As stated above, in order to avoid procedural default, the Petitioner must first demonstrate "cause" for failing to raise the issue on direct appeal. The only available "cause" in this case is the ineffective assistance of appellate counsel for his failure to raise the *Apprendi* issue on direct appeal. *Belford*, 975 F.3d at 313-14 (ineffective assistance can serve as a cause for the purposes of procedural default). Whether analyzing a claim for ineffective assistance of trial counsel or appellate counsel, the court applies the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To meet that test, a defendant must demonstrate both: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88, 694. Regarding the first prong, a petitioner must demonstrate that counsel's performance fell below an objective standard for reasonably effective representation. *Id.* at 687-88. Courts reviewing counsel's performance are deferential, however, and presume that counsel's performance "falls within the wide range of reasonable professional assistance." *Id.* at 689. The prejudice prong of the *Strickland* test requires a showing that if not for counsel's deficient performance, there was a reasonable probability that the result would have been different. *Id.* at

694. The bar for this second prong is quite high and "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

The court must address, first, whether appellate counsel for Jones and Tetteh were deficient for failing to raise the *Apprendi* issue on direct appeal. "Effective advocacy does not require the appellate attorney to raise every non-frivolous issue under the sun . . . ." *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996), citing *Jones v. Barnes*, 463 U.S. 745 (1983). The court notes, however, that when an appellate counsel forgoes "a significant and obvious issue" the court will deem appellate counsel's performance deficient. *Mason,* 97 F.3d at 893 (citations omitted). The court notes, moreover, that when the issue omitted by appellate counsel "may have resulted in a reversal of the conviction, or an order for a new trial," the court should find prejudice. *Id.* (citations omitted).

The court will assume, for purposes of this decision, that the performance of appellate counsel was deficient under the first prong of the *Strickland* test because the *Apprendi* issue was both obvious and significant. As stated above, the decision was issued three months prior to the date of Petitioners' oral argument before the Seventh Circuit, which provided plenty of time for appellate counsel to become familiar with the Court's ruling in *Apprendi*. It should also have been obvious that *Apprendi* would apply to Petitioners' case, where the judge had made all pertinent sentencing determinations using a preponderance standard. Lastly, the *Apprendi* decision also resulted in a meaningful change in criminal procedure and reversed the Seventh Circuit's precedent regarding who was the proper trier of fact, judge or jury, for sentencing purposes. Accordingly, the court will proceed under the assumption that appellate counsel was deficient for failing to raise this issue on direct appeal.

Assuming that the first prong of the *Strickland* test has been met, the court turns its attention to whether Petitioners have been prejudiced by this deficient performance. This is a more complicated issue. The government has addressed the prejudice prong of the *Strickland* test in

10

several ways, not all of which are persuasive. The government argues, first, that *Apprendi* is not retroactively applied on collateral attack if a petitioner's sentence became final after the date of the decision, June 26, 2000. *Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002) ("*Apprendi* does not disturb sentences that became final before June 26, 2000, the date of its release.") The Petitioners' direct appeal took place after the Court's decision in *Apprendi* and thus the sentence was not final prior to June 26, 2000. *Teague v. Lane*, 489 U.S. 288, 295 (1989) (a conviction becomes final after the judgment has been rendered and the opportunities for appeal have been exhausted, including the period for filing a petition for certiorari with the United States Supreme Court). The court notes, moreover, that the issue here is whether Petitioners Jones and Tetteh were prejudiced by counsel's failure to raise this issue on direct appeal, not in a collateral attack.

The government has also addressed the Petitioner's *Apprendi* claim as if Petitioners are objecting to the court's drug *quantity* determination for sentencing. Although the Petitioners might have had a claim under *Apprendi* regarding the trial judge's determination of the drug quantity, they did not object to this determination in their 2255 petition. Because the argument was not raised in the section 2255 petitions submitted by Jones and Tetteh, the court does not need to address this issue.

The gist of Petitioners' *Apprendi* argument is that the jury should have made a finding beyond a reasonable doubt as to the type of drug involved in the conspiracy. At Petitioners' sentencing hearing, after the jury returned a general guilty verdict on the conspiracy charge, the trial court determined that the conspiracy involved crack cocaine and then applied the applicable sentencing guidelines for that drug. At the time of Petitioners' sentencing, this was clearly the correct procedure. *See, e.g., United States v. Edwards*, 105 F.3d 1179, 1182 (7th Cir. 1997) ("judge is free to determine after the verdict which penalty is appropriate in light of the types and quantities of drugs handled.") As explained earlier, however, the court's decision in *Edwards* and the procedure it endorsed were abrogated by *Apprendi*. *United States v. Brough*, 243 F.3d 1078,

11

1079 (7th Cir. 2001). Although *Apprendi* would not necessarily require a different result in Petitioners' case, it would most certainly require a different procedure. Whether the failure to follow the procedures described in *Apprendi* was prejudicial to Petitioners Tetteh and Jones is still unclear, however.

In *United States v. Jackson*, 236 F.3d 886, 887-88 (7th Cir. 2001), the Seventh Circuit reconsidered its decision to affirm a defendant's conviction and sentence under section 841, after the Supreme Court had vacated the decision and remanded the case for reconsideration in light of *Apprendi*. In sentencing the defendant, the trial judge determined that defendant's offense involved at least 5 grams of crack cocaine, which under 21 U.S.C. § 841(b)(1)(B) resulted in the defendant receiving a sentence of 30 years. *Id.* If the court had not made any quantity determination, under 21 U.S.C. § 841(b)(1)(C) the statutory maximum was 20 years. *Id.* Despite the fact that *Apprendi* required the jury to make this finding as to drug quantity, the court found that the defendant was not prejudiced because the evidence that defendant's offense involved 5 grams of crack cocaine was overwhelming. *Id.* Thus, the court found that "the failure to ask the jury to determine whether the amount was at least 5 grams was harmless far beyond a reasonable doubt." *Id.*

Similar to the result in *Jackson*, the government here urges that the trial judge's failure to require the jury to make the finding as to drug type was not prejudicial given the overwhelming evidence that crack cocaine was involved in the drug conspiracy. The record supplied in connection with the government's motion to dismiss, however, is quite limited. Although the government stated that the trial court found that "the Gangster Disciples sold at least 5,475 kilograms of cocaine and base cocaine per year," it failed to provide the transcripts providing the basis for that finding. (Motion to Dismiss, at 19.) The court notes, moreover, that the primary issue to resolve regarding prejudice is whether the evidence pertaining to the prevalence of crack cocaine in the conspiracy was so overwhelming that no reasonable jury could make a finding

12

different than the sentencing judge, not what the trial judge determined. Because the record provided as part of the government's motion to dismiss does not address the evidence of crack cocaine at trial, the court is unable to resolve this prejudice issue. Accordingly, the court will reserve judgment on this issue pending a further response from the government.[4]

Petitioners Tetteh and Jones also argue that because their conspiracy sentences were improperly calculated, the court should also reconsider the sentence imposed by the district court for Petitioners' convictions for using minors under 21 U.S.C. § 861. As the court understands the argument, Petitioners believe the trial court's finding as to drug type under section 846 led to the imposition of increased sentences under section 861(b). In the event the court were to adjust Petitioners' sentence under section 846, Petitioners urge, their sentences on the section 861(b) convictions must also be revisited. As stated above, the court is reserving judgment on whether or not Petitioners have been prejudiced by the trial court's determination of drug type in connection with their convictions under section 846. Because Petitioners' argument is contingent on that finding, the court will reserve judgment on this issue as well.

In addition, Gholson raises an *Apprendi* claim pertaining to his sentence under 21 U.S.C. § 848(b). Section 848(b) mandates a life sentence for any defendant found to have engaged in a continuing criminal enterprise if that defendant was a principal administrator or leader of the enterprise and the enterprise sold a certain amount of drugs or garnered a certain amount of money. The trial court judge determined that both elements were met and thus section 848(b) mandated a life sentence. Gholson argues that the government did not indict him under section 848(b) nor prove these elements to the jury beyond a reasonable doubt. In response, the government contends that this claim should be dismissed because *Apprendi* does not call

---

[4]     Petitioners cite the rule of lenity several times in support of their petitions, including in support of this claim. According to the rule of lenity, in situations "where text, structure, and history fail to establish that the Government's position is unambiguously correct," the court will "resolve the ambiguity in [Petitioner's] favor."   *United States v. Granderson*, 511 U.S. 39, 54 (1994). At this stage, the court is not prepared to conclude that there are ambiguities regarding Petitioners' claim.

13

Gholson's sentence into question. The court agrees.

Apprendi is relevant only where a defendant is sentenced to a term that exceeds the statutory maximum. *Talbott v. Indiana*, 226 F.3d 866, 869 (7th Cir. 2000). When a defendant has been convicted under a statute that carries a maximum penalty of life imprisonment, *Apprendi* does not constrain the sentencing judge. *Id.* Such is the case with Gholson. He was convicted and sentenced under 21 U.S.C. § 848(a), which provides that "[a]ny person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment." 21 U.S.C. § 848. Because his sentence of life imprisonment falls within the maximum statutory sentence, Gholson is not affected by the ruling in *Apprendi*. Therefore the court will grant the government's motion to dismiss Gholson's *Apprendi* claim.

### B.    Double Jeopardy Claims

Petitioners Jones and Tetteh argue, next, that their due process rights were violated because they were punished twice for the same conduct in violation of the Fifth Amendment's double jeopardy clause. Specifically, Petitioners argue that section 861(a)(1) is a lesser included offense of section 861(a)(2) and thus they can not be punished for violating both statutes. In *Whalen v. United States*, 445 U.S. 684, 691 (1992), the Court explained that "multiple punishments cannot be imposed for two offenses arising out of the same criminal transaction unless each offense 'requires proof of a fact which the other does not.'" *Id.*, quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "A lesser included offense is simply an offense that requires proof of only a subset of the elements of the greater offense." *United States v. Hill*, 196 F.3d 806, 808 (7th Cir. 1999).

In this case Petitioners Jones and Tetteh were convicted under two prongs of section 861: They were convicted under section 861(a)(1), for using a person under the age of 18 to violate the law in connection with their drug conspiracy and under section 861(a)(2), which makes it unlawful to use a person under the age of eighteen to assist in avoiding detection of a drug conspiracy.

14

Specifically, section 861 states:

> It shall be unlawful for any person at least eighteen years of age to knowingly and intentionally--
> (1) employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to violate any provision of this subchapter or subchapter II of this chapter;
> (2) employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to assist in avoiding detection or apprehension for any offense of this subchapter or subchapter II of this chapter by any Federal, State, or local law enforcement official . . .

21 U.S.C. § 861(a)(1) and (2).

Although Petitioners Jones and Tetteh have supplied a great deal of authority related to the double jeopardy clause, they have not cited any case law holding that section 861(a)(2) is a lesser included offense to section 861(a)(1). Nor has the court been able to find any such authority. The court notes, however, that it might well be possible to interpret the statute this way; that is, an individual guilty of using a minor to assist in avoiding detection of a drug conspiracy might be said, for the same conduct, to be guilty of using a minor for purposes of drug distribution. In other words, the same conduct by defendant could be charged as both a violation of section 861(a)(1) and (2). Of course, it is also possible that the government presented evidence concerning two or more different incidents, supporting independent bases for Jones' or Tetteh's convictions on these two counts.

The government has not addressed this issue in its motion to dismiss. Nor is the court able to determine from the indictment the exact conduct for which Jones and Tetteh were convicted under section 861(a)(1) and (2). The section 861 violations were charged as Counts Three and Four in the indictment and refer back to the charges in the conspiracy count, Count One of the indictment. In Count One, however, the court finds only one reference regarding the involvement of minors in the drug conspiracy. Specifically, the indictment states that certain members of the Gangster Disciples were assigned to security and that these members "were responsible for protecting the ranking members . . . . Juveniles and non-felons often were selected to possess the

firearms by the gang's leaders because they are dealt with more leniently by the criminal justice system." (Petitioner's Indictment, at 6.) Based on the indictment itself, the court is unable to find that Petitioners were punished for different conduct in relation to their convictions under section 861(a)(1) and (2). Accordingly, the court again reserves judgment and requests that the government specifically address this issue in a supplemental response.

Similarly, Petitioners Jones and Tetteh argue that their drug conspiracy conviction under section 846 is a lesser included offense in relation to their convictions under section 861(a)(1) and (2). Such an argument prevailed in *United States v. Brewer*, 199 F.3d 1283 (11th Cir. 2000), where the Eleventh Circuit held that a defendant's conviction under 21 U.S.C. § 841(a)(1) for distributing cocaine base and his conviction under 21 U.S.C. § 861(a)(1) constituted the same offense for double jeopardy purposes. *Id.* at 1287. The court notes that in *Brewer*, the Eleventh Circuit found that the sentence violated the double jeopardy clause because the two convictions were based on the exact same drug transaction. *Id.*

The government's response to this argument is disappointing; it simply observes that the holding by the Eleventh Circuit has no bearing on this case because the Seventh Circuit has yet to address this issue. After reviewing the indictments against Jones and Tetteh, however, the court concludes that unlike the defendant in *Brewer*, the Petitioners here were not punished twice for the same criminal conduct. Although the conspiracy involved minors, it is clear from the indictment that Petitioners were punished for conduct that went far beyond using minors in the course of a drug conspiracy. The conspiracy count includes a wide array of charges related to a sophisticated and violent drug organization operated by the Gangster Disciples that functioned to sell drugs throughout Chicago. Accordingly, the court does not find that Petitioners were punished twice in connection with their conviction under sections 861 and 846.

    **C.**    **Jones: Notice of Prior Convictions**

16

Jones claims that it was inappropriate for the trial judge to consider his prior convictions in determining his sentence because these convictions were not presented to the court before trial. To the extent the court understands Jones' argument here, he is asserting that the government failed to meet its obligations under 21 U.S.C. § 851(a) to file an information with the court regarding Jones' prior convictions prior to trial. Specifically, section 851(a) states:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a). The court does not need to address the merits of this argument, however, because it is not properly raised in this section 2255 petition. Neither side has explained whether this issue was raised on appeal, but the court presumes that it was not, because the Seventh Circuit's opinion makes no mention of section 851(a). Where the petitioner did not raise an issue on direct appeal, that issue can not be raised in a section 2255 motion. *Belford*, 975 F.2d at 313. ("section 2255 motion cannot raise . . . nonconstitutional issues that could have been but were not raised on direct appeal . . ."); *see also United States v. Ceballos*, 302 F.3d 679, 692 (7th Cir. 2002) ("[section] 851(a)'s procedural requirements are not jurisdictional"). Accordingly, the court grants the government's motion to dismiss this claim.

### D. Gholson: Fourth Amendment Claims

Gholson argues that he is entitled to habeas relief because his Fourth Amendment rights were violated when he was falsely arrested and prosecuted. In support of this claim, Gholson makes a number of allegations of wrongdoing on the part of law enforcement, the prosecution, and some of the witnesses against him. Specifically, he claims that he was arrested because a police officer had a grudge against him and planted drugs on him during the arrest. Gholson alleges, further, that the indictment against him was based on perjured testimony, which he claims the government knew at the time of his indictment. Despite the fact that this issue was raised in

Gholson's initial habeas petition, the government has not addressed this issue. Accordingly, the court requests that the government specifically address this claim in its supplemental response, either by addressing the merits of the argument or, if Gholson did not raise these issues on direct appeal, by arguing procedural default.

Gholson also raises a number of issues that he did present to the Seventh Circuit on direct appeal. He argues that his conviction under section 848 was improper in light of the Court's decision in *United States v. Richardson*, 526 U.S. 813 (1999), which held "that a CCE conviction can be sustained only if the jury unanimously agreed on each of the specific predicate acts required to show the existence of the CCE." *Wilson*, 237 F.3d at 833 (7th Cir. 2001), citing *Richardson*, 526 U.S. 8. The Seventh Circuit considered and rejected this claim, however, when Gholson raised it on direct appeal. Specifically, the court stated that the court's failure to instruct the jury that it had to make a finding as to each predicate offense was harmless, where the jury did in fact convict Gholson of the requisite two predicate offenses related to the CCE charge.[5] Gholson also argues that the trial court's findings about the quantity of drugs for sentencing purposes was improper. Specifically, he characterizes the proof of the amount of drugs involved in the transaction as pure speculation. This issue was also raised on direct appeal and the court endorsed the district court's method of calculating the amount of drugs involved in the conspiracy. *Wilson*, 237 F.3d at 831. Because these issues were considered on direct appeal and Gholson offers no new information, this claim cannot be raised in a section 2255 motion. *Belford*, 975 F.2d at 313.

### E.    Ineffective Assistance of Counsel Claims

---

[5]    Gholson also seems to argue that these two convictions were dismissed by the district court judge following his sentence under the CCE statute and therefore can not be used to support his conviction. This does not disturb the Seventh Circuit's "harmless error" determination, however. The government dismissed the remaining counts against Gholson at his sentencing hearing after the court had determined Gholson warranted a mandatory life sentence pursuant to the CCE statute. The Seventh Circuit simply observed that Gholson had in fact been convicted under section 861(a)(1) and (2). *Wilson*, 237 F.3d at 830.

18

All three Petitioners raise ineffective assistance of counsel claims related to both their trial and appellate counsel. Petitioners Tetteh and Jones argue that the right to effective assistance of trial counsel and appellate counsel was violated because the counsel failed to raise the issues they now raise in their motion for habeas relief. Gholson makes a number of more specific allegations, however, which the court will discuss below. In its brief response to these claims, the government argues that Petitioners have procedurally defaulted their claim to the ineffective assistance of trial counsel and have not shown that their appellate attorneys were ineffective.

The court has already set forth the *Strickland* test to establish a claim for the ineffective assistance of counsel. The government argues, first, that Petitioners' ineffective assistance of trial counsel claims fail because they have been procedurally defaulted. Specifically, the government argues that Petitioners failed to raise the issue on direct appeal, when they had the benefit of different appellate counsel. *Guinan v. United States*, 6 F.3d 468, 471 (7th Cir. 1993). The Supreme Court has recently held, however, that an "ineffective assistance of counsel claim may be brought in a collateral proceeding under 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 123 S.Ct. 1690, 1694 (2003) (abrogating *Guinan v. United States*, 6 F.3d 468 (7th Cir. 1993)). Accordingly, the court finds that the claim has not been procedurally defaulted.

As stated above, the court has reserved judgment regarding the claim raised by Petitioners Jones and Tetteh that their appellate counsel was ineffective based on their counsel's failure to raise *Apprendi* on direct appeal. Petitioners also claim, however, that their trial counsel was ineffective for failing to raise the issues they now raise in their habeas petition. The court finds that trial counsel's failure to raise *Apprendi* or an *Apprendi*-type issue at trial did not rise to the level of ineffective assistance of counsel because the trial was held before the *Apprendi* decision was issued. The court has previously noted that *Apprendi* reversed the precedent of the Seventh Circuit regarding who (judge or jury) was responsible for making certain determinations relevant to

19

sentencing. Because Petitioners' trial was held prior to this shift in the law, the trial counsel was not ineffective for failing to forecast the change in the law and raise the issue at trial. *Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) (argument that counsel was ineffective for failing to raise *Apprendi*-type issue prior to the Court's decision is "meritless"); *See also Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel to forecast changes or advances in the law").

The court has more trouble resolving Jones and Tetteh's ineffective assistance of counsel argument based on their counsel's failure to raise their double jeopardy claims at trial or on appeal. As explained above, one of the double jeopardy claims lacks merit; Petitioners did not suffer any prejudice from their attorneys' failure to argue that the use of a minor conviction was a lesser offense to the drug conspiracy conviction. For the reasons discussed earlier, however, the court will reserve judgment on Petitioner's remaining double jeopardy claim. It is unclear based on the record whether Petitioners were punished twice for the same conduct under section 861(a)(1) and (2). Accordingly, the court will resolve this issue after receiving the government's supplemental response.

Gholson's claims regarding ineffective assistance of counsel are more numerous and complicated than those of Tetteh and Jones. In his original section 2255 petition as well as his amended petitions, Gholson argues that his trial counsel was ineffective for a number of reasons. Specifically, Gholson claims that his trial counsel was ineffective for: (1) failing to interview any individuals who could have provided favorable evidence on Gholson's behalf at trial; (2) failing to subpoena these witnesses; (3) failing to interview the government's witnesses; (4) failing to discuss the presentence report with Gholson or object to the report; (5) failing to familiarize himself with the facts and law relevant to Gholson's case; (6) failing to inform Gholson that his prior criminal convictions would be used to enhance his sentence; (7) discouraging Gholson from entering a plea agreement that would have allowed Gholson to plead guilty in exchange for a 20-year sentence;

20

(8) providing misinformation regarding the maximum sentence Gholson could receive if convicted (attorney at trial allegedly told Gholson that 20 years was the maximum sentence); (9) failing to argue that Gholson was not the person on audio and videotapes presented by the government, (10) calling Gholson a "thug" in front of the jury; (11) preventing Gholson from testifying at trial because he was not prepared to perform a direct examination; (12) failing to object during the direct examination of the police officer who, Gholson claims, planted evidence on him. Gholson claims, further, that his conviction and sentence to life imprisonment is a result of his attorney's deficient representation.

As stated above, the government argues that this issue has been procedurally defaulted because Gholson had a different attorney on direct appeal and failed to raise the issue at that time. *Guinan*, 6 F.3d at 468. Again, the law has changed since the government filed its motion to dismiss on December 6, 2002, and it is now clear that Gholson's claim was properly raised for the first time as part of a habeas petition. *Massaro*, 123 S.Ct. at 1694. On this issue, as well, the court will reserve judgment and invite the government to file an additional response addressing the merits of Gholson's ineffective assistance arguments.

In addition, Gholson claims that his appellate counsel was ineffective because his attorney failed to talk with him in preparing for the direct appeal. The court assumes that if Gholson had talked with his attorney, he would have asked him to raise the issues he now raises in his habeas petition. Because the court is unable to resolve this claim until the government has addressed Gholson's substantive claims, the court will reserve judgment on this claim, as well.

## II. Gholson's Motion under 18 U.S.C. § 3582

Gholson has filed a motion under 18 U.S.C. § 3582(c)(2) for a reduction of his sentence reduced. Under 18 U.S.C. § 3582(c)(2), a court may modify a prisoner's term of imprisonment if the defendant was sentenced under a sentencing range that was subsequently lowered. 18 U.S.C.

§ 3582(c)(2). Although the court recognizes that it has the discretion to modify a sentence as result of a lowered sentencing range, the statute does not apply here because the range has not been lowered since the date of Petitioner's sentencing.

The sentencing guideline applicable to Gholson at the time of his sentencing was U.S.S.G. § 2D1.1. Under that guideline as it existed at the time of Gholson's sentencing, a person found to be involved in trafficking 150 kilograms or more of cocaine or 1.5 kilograms or more of cocaine base, has a base offense level of 38. This base offense level is the same under the current guidelines. Because the guideline cited by Gholson has not been lowered, the court finds that he fails to state a claim under section 3582(c)(2) and his motion is denied. Gholson also claims that it was improper for the trial judge to issue a one level enhancement for using a minor to carry out the drug conspiracy and a four level enhancement for playing a leadership role. Gholson does not claim that the guidelines have changed regarding these enhancements, however, nor has the court found any such indication. Accordingly, this court denies Gholson's motion to modify his sentence under 18 U.S.C. § 3582. The court notes, further, that Gholson was sentenced under the portion of the CCE statute that requires a mandatory life term of imprisonment, thus the court is uncertain whether any change to the offense level would have any bearing on Gholson's sentence.

### III.    Gholson's Motion Under 18 U.S.C. § 3572(c)

Gholson has filed a motion under 18 U.S.C. § 3572(c), which permits this court, under certain specific circumstances, to modify a defendant's sentence. Gholson argues that he has been required to pay back a $400 special assessment, which is greater than the amount ordered by the district court at sentencing. Petitioner seeks to have the special assessment adjusted to $100 as properly assessed by the district court. The government acknowledges that following the trial court's decision to sentence Gholson to a life term of imprisonment under the CCE statute, the government dismissed the three remaining counts and that the district court ordered a special

22

assessment of $100 on the CCE Count. (Government's Motion to Dismiss at 23.) Without any dispute regarding this matter, the court grants Gholson's motion to have his special assessment adjusted from $400 to $100.

Gholson also argues that the fine of $15,000 imposed by the court at sentencing is overly harsh because he is earning only $40 every three months from his prison employment. Gholson claims he is required to relinquish his entire paycheck to the Bureau of Prisons in order to pay his fine. This payment plan, according to Gholson, imposes a tremendous hardship on him.

The government has failed to address this issue, but the court was sufficiently concerned about Gholson's assertions that it directed a Probation Officer, Sheila Lally, to contact Gholson's case manager concerning his finances. Ms. Lally reported that Gholson earns approximately $36.0 per quarter. He is paying $25.00 per quarter toward his financial obligations, but that amount is not always collected every quarter; for example, nothing was collected from his prison earnings for the first quarter of this year (perhaps because Gholson was moved from one institution to another in February 2003). More significantly, Ms. Lally reported that in the past several months, Mr. Gholson has had deposits to his prison account, apparently from sources outside the prison, in the amount of $2,179.72, and has spent $823.53. He currently has a balance in his prisoner account of approximately $1400.00. Indeed, far from supporting a reduction, in light of Gholson's continued ability to attract funds from "the outside," his case manager intends to ask Gholson to agree to an increase in the amounts Gholson pays each month.

Under these circumstances, this court is unwilling to make any downward adjustment in the fine imposed by the sentencing court. Under 18 U.S.C. § 3572(a), the sentencing court reviews a number of factors in determining an appropriate fine, including: the defendant's earning capacity, income, and the hardship it will place on defendant and his family. 18 U.S.C. § 3572(a). The court is confident that the sentencing court was aware of Gholson's financial circumstances and anticipated reduction of income resulting from his incarceration. To the extent that Gholson is

23

indeed required to pay his $15,000 fine solely from prison earnings, the court recognizes the financial burden will be steep and will likely continue throughout his natural life. That burden is slight in comparison to the costs of prosecuting and incarcerating Gholson, however. And Gholson's burden pales to nothing in comparison to the emotional and financial price that our society pays for the harm caused by the drug distribution conspiracy in which he participated. The motion to adjust Gholson's fine is denied.

IV.     **Gholson's Motion under Federal Rule of Criminal Procedure 12(b)**

Lastly, Gholson has filed a motion pursuant to Federal Rule of Criminal Procedure 12(b), arguing that the court lacked jurisdiction to sentence him to life imprisonment under 848(b) because the factors set forth in that section, relevant to sentencing, were not charged in the indictment and not presented to the jury. FED. R. CRIM. P. 12(b)(2) provides that "a defendant may raise at any time an objection that the indictment 'fails to show jurisdiction or to charge an offense,' and such an objection 'shall be noticed by the court at any time during the pendency of the proceedings.'" *Smith*, 223 F.3d 554, 571 (7th Cir. 2000), quoting FED. R. CRIM. P. 12(b)(2). The court has already addressed this claim in another context. Gholson here again argues that *Apprendi* requires that the government prove these sentencing factors to the jury beyond a reasonable doubt. As stated above, however, *Apprendi* does not apply to Gholson's case. Accordingly, Gholson's motion attacking jurisdiction is denied.

## CONCLUSION

For the foregoing reasons, the court has reserved judgment on a number of the issues raised by Petitioners, pending further response from the government. Specifically, the court has reserved judgment on: (1) the *Apprendi* claims raised by Petitioners Jones and Tetteh; (2) the double jeopardy claim raised by Jones and Tetteh pertaining to section 861(a)(1) and (2); (3) Gholson's Fourth Amendment claim; (4) the ineffective assistance of appellate counsel claims

raised by all three Petitioners; and (5) Gholson's ineffective assistance of trial counsel claim. The court has granted the government's motion to dismiss: (1) Gholson's *Apprendi* claims; (2) Jones and Tetteh's remaining double jeopardy claim pertaining to sections 846 and 861(a)(1); (3) Jones' claim that his prior convictions were improperly submitted at sentencing; (4) Gholson's claim that his sentence was improper in light of *Richardson*; (5) Gholson's claim that the trial court's findings as to drug quantity were incorrect; and (6) Jones and Tetteh's ineffective assistance of trial counsel claim. In addition, the court grants the government's motion to dismiss Gholson's motions under 18 U.S.C. § 3582 and Federal Rule of Criminal Procedure 12(b). Lastly, the court has granted in part and denied in part Gholson's motion to reduce his fine under 18 U.S.C. § 3572 and the court grants Gholson's motion to amend his section 2255 petition.

ENTER:

Dated: June 25, 2003

REBECCA R. PALLMEYER
United States District Judge